**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────────

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                                    **03-CR-140A(Sr)**

**PETER HALAS, III**[1]**,**

        **Defendant.**

───────────────────────────────────

**REPORT, RECOMMENDATION AND ORDER**

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

───────────────────

[1] There is a great deal of confusion in the record in this case in that there are numerous references to a "Peter Halas III," "Peter Halas, Jr.," "Peter Halas" and "Nicholas Peter Halas." It is this Court's understanding that two male individuals by the name of "Halas" have been charged in different indictments and that one is the father and the other is the son. To add to this confusion, it appears that references made to "Peter Halas III" and "Peter Halas, Jr." are references to the same individual and that individual is the father. Apparently "Nicholas Peter Halas" is the son. Why the father should be referenced as a "Jr." or the "III" is a complete mystery to this Court. In any event, this Court will treat all references to "Peter Halas III," "Peter Halas, Jr." and "Peter Halas" as being references to the same person, to wit, the father, who is the named defendant in this superseding indictment.

## PRELIMINARY STATEMENT

The defendant has filed a motion wherein he seeks "an order controverting Judge Pollack's order authorizing the interception of communication (sic) occurring over cellular telephone assigned number 347-597-1384 with international mobile subscriber identification number 310260800321788" which was "based upon the application of Mark J. Kadan, Special Agent with the United States Drug Enforcement Administration, dated November 8, 2002." (Docket #35, ¶¶ 4, 5). United States District Judge Milton Pollack of the Southern District of New York found "probable cause to believe that: Ismael Lugo, a/k/a "Cholo," Manuel Campas Medina, Steven Silva, Diane Palmer, Nicholas Peter Halas, Jr., Peter Halas, Vince Comacho, and others as yet unknown (the 'TARGET SUBJECTS'), are involved in (a) offenses involving the importation, distribution, and possession with intent to distribute, of controlled substances, the use of wire facilities to facilitate the same, conspiracy to do the same and attempts to do the same in violation of Title 21, United States Code, Sections 841, 843(b), 846, 952, 960 and 963; and (b) the laundering of the proceeds derived through the distribution of illegal narcotics in violation of Title 18, United States Code, Sections 1956 and 1957." (Docket #35, Exhibit B attached thereto). Judge Pollack also found that there was "probable cause to believe that the subjects of this investigation have aided and abetted and are aiding and abetting those substantive offenses [under 18 U.S.C. § 2516], in violation of 18 U.S.C. § 2." (Docket #35, Exhibit B attached thereto, footnote 1).

The defendant asserts that "there was no probable cause to believe that Peter Halas had committed one of the offenses set forth in 18 U.S.C. § 2516 or that the facilities which were to be surveilled were being used in furtherance of any criminal conduct." (Docket #35, ¶¶ 29, 47, 51).

The defendant also argues that "subsequent Western District of New York wiretaps were tainted as a result of the improperly and illegally obtained information derived as a result of the execution" of Judge Pollack's order dated November 8, 2002. (Docket #35, ¶¶ 52, 3). The "Western District of New York" orders which are vicariously under attack by the defendant were issued by the Hon. William M. Skretny on March 4, 2003, April 2, 2003, May 14, 2003, May 30, 2003 and June 23, 2003 and the Hon. John T. Elfvin on May 1, 2003 for telephones "(716) 864-8087 listed in the name of Peter Halas at 3690 Saxony Place, Blasdell, New York;" "(716) 864-1981 listed in the name of Peter Halas, 3690 Saxony Place, Blasdell, New York;" "(716) 823-9828 subscribed to and utilized by Peter Halas." (Docket #26, ¶¶ 61(a)(b)(c)).

The government has advised defense counsel "that Judge Pollack's eavesdrop order is the order that was utilized to obtain various information which information was utilized to obtain the eavesdrop orders in the Western District of New York." (Docket #35, ¶ 3). As a result, this Court's analysis will focus on the application of S.A. Mark J. Kadan of the Drug Enforcement Administration dated November 8, 2002 in support of an interception order and Judge Pollack's Order dated

November 8, 2002.[2]

## **DISCUSSION AND ANALYSIS**

**Probable Cause Issue:**

S.A. Mark J. Kadan submitted a forty-six (46) typewritten page affidavit sworn to November 8, 2002 in support of an application for authorization to intercept wire communications to Judge Pollack. (Docket #35, Exhibit A attached thereto). In that affidavit he set forth a detailed history of what the DEA investigation had learned to date by use of confidential informants, analysis of calling records from prior telephones utilized by the subjects of the investigation as well as a review of the calling records of the target cell phone for which authorization was being sought, prior drug seizures and surveillances.

Judge Pollack found that the affidavit of S.A. Kadan and the formal application submitted seeking an intercept order provided probable cause and therefore issued his order of November 8, 2002. (Docket #35, Exhibit B attached thereto).

The defendant asserts that the affidavit of S.A. Kadan was deficient in establishing probable cause in that: (1) "the 'track record' of the two informants upon whom Agent Kadan relied was insufficient to show that they were reliable in the

---

[2] In his original moving papers (Docket #26, ¶ 62), defendant made reference to numerous eavesdrop orders issued by various judges sitting in the Southern District of New York, the Central District of California and the district of Arizona.

absence of any independent corroboration of a substantial nature" (Docket #35, ¶ 33); (2) "the affidavit failed to describe a basis which supported the informants' information or establish how such information was learned or obtained" (Docket #35, ¶¶ 34, 35); (3) "the information Agent Kadan provided in his affidavit was based upon conclusory statements by the informants" (Docket #35, ¶ 39); (4) that S.A. Kadan "attempted to show that the five predecessor's (sic) cellphones [that he referenced in his affidavit] were somehow utilized to advance criminal conduct without even indicating that, in fact, the cellphones were ever utilized to that extent," (Docket #35, ¶ 38); (5) "much of the information contained in the application for the wiretap was either stale information or information which should have no bearing on the issue of probable cause," (Docket #35, ¶ 54); (6) "Agent Kadan outlined Mr. Halas' criminal history without attempting to indicate a nexus between Mr. Halas' criminal history and his involvement with other individuals suspected of criminal activity," (Docket #35, ¶ 35); and (7) "the suspicions and surmise set forth by Agent Kadan, simply put, do not establish probable cause." (Docket #35, ¶ 51).

In essence, the defendant has attempted to separate and isolate the various proffers put forth in support of the application as they relate to him. This approach is of no avail to the defendant.

Basically, the defendant is requesting that a review of Judge Pollack's decision in issuing the intercept order of November 8, 2002 be made so as to conclude that such order was improperly issued. The role of this Court in conducting such a

review is no different than that conducted by a court of appeals and therefore, the admonition of the Second Circuit Court of Appeals is appropriately applied in this process wherein the Court stated:

> "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court." *Miller*, 116 F.3d at 663 (quoting *Torres*, 901 F.2d at 231). Our role in reviewing the issuance of a wiretap order is not to make a *de novo* determination of the sufficiency of the application, "but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *Id.*

*United States v. Diaz*, 176 F.3d 52, 109 (2d Cir.), *cert. denied* by *Rivera v. United States*, 528 U.S. 875 (1999).

> "[T]he standard for probable cause applicable to [18 U.S.C.] § 2518 is the same as the standard for a regular search warrant."

*Id.*

In determining whether probable cause exists for the issuance of a warrant, the United States Supreme Court has stated:

> The totality of the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a "practical, nontechnical conception." (citation omitted). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical;

-6-

> they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (citation omitted.)
>
> In *Aguilar,* we required only that "the magistrate must be informed of *some of the underlying circumstances* from which the informant concluded that . . . narcotics were where he claimed they were, and *some of the underlying circumstances* from which the officer concluded that the informant . . . was "credible" or his information "reliable." (citation omitted).
>
> As our language indicates, we intended neither a rigid compartmentalization of the inquiries into an informant's "veracity," "reliability," and "basis of knowledge," nor that these inquiries be elaborate exegeses of an informant's tip. Rather, we required only that *some* facts bearing on two particular issues be provided to the magistrate.
>
> \* \* \*
>
> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis . . . for [conclud[ing] "that probable cause existed. (citation omitted). We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*.

*Illinois v. Gates,* 462 U.S. 213, 231, 238-239 (1983).

Further, the Court of Appeals for the Second Circuit has stated that:

> A plaintiff who argues that a warrant was issued on less than

> probable cause faces a heavy burden. "Where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). In particular, where the officer requesting the search warrant relies on an informant, the magistrate's role is to examine the totality of the circumstances and to
>
> make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.
>
> > *Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir. 1988).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

In addressing the role and/or activities of Peter Halas in his affidavit of November 8, 2002, S.A. Kadan sets forth substantial detail describing: (1) informant information as to Peter Halas and corroboration of same by a records check of "New York State Drivers' License records;" (2) his review of the criminal history of Peter Halas and noting convictions of Peter Halas for illegal drug activity in 1989 (cocaine, New York State), 1994 (conspiracy to distribute and possess with intent to distribute marijuana, 21 U.S.C. § 846, Western District of New York), and conspiracy to violate the Pennsylvania Controlled Substances Act); (3) his review of telephone subscriber records for Peter Halas and his business, Southwest Auto Carrier and Sales; and (4) a review of

the telephone records for Peter Halas and his business which established numerous phone calls to these telephone numbers from phones utilized by Ismael Lugo.  (Docket #35, Exhibit A attached thereto, ¶¶ 2, 30, 36, 38, 41, 42, 46 and 53.

In reviewing the forty-six typewritten pages of S.A. Kadan's affidavit of November 8, 2002 submitted in support of the application for the intercept order issued by Judge Pollack (Docket #35, Exhibit A attached thereto), it is clear that the "totality of the circumstances" described therein established probable cause for the issuance of the order and that deference to Judge Pollack's decision in doing so is warranted. *Illinois v. Gates, supra; United States v. Diaz, supra*.  What defense counsel claims to be "speculation" on the part of S.A. Kadan in his affidavit is easily read as an expression of this agent's expertise and experience in investigating drug cases.  As the Court of Appeals for the Second Circuit has expressly held, training and experience of an agent can be considered in determining whether probable cause exists.  *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985), *cert. denied*, 486 U.S. 1043 (1987).

As to defendant's claim that the information supplied by the confidential informants was not reliable because S.A. Kadan failed to disclose their "track record" or independently corroborate the reliability of the information being provided, such claim is without merit and ignores what was expressly stated by S.A. Kadan as to the informants.  In paragraphs 15, 16 and 17, he describes information provided by the one informant ("CI-1") which resulted in two separate seizures of substantial amounts of

cocaine. In paragraph 19 of his affidavit, S.A. Kadan iterates that the other confidential informant ("CI-2") provided information which resulted in "the seizure of 34 kilograms of cocaine on Feb. 14, 2002."

Therefore, it is this Court's opinion that the facts set forth in S.A. Kadan's affidavit of November 8, 2002 are "adequate to support the determination" made by Judge Pollack in issuing the intercept order of November 8, 2002. Further, I find that the defendant has failed to meet his "heavy burden" of establishing that probable cause for the issuance of the intercept order of November 9, 2002 did not exist. As a result, his vicarious attack on the validity of the subsequent intercept orders authorized by Judges Skretny and Elfvin is also without merit. Therefore, it is hereby RECOMMENDED that defendant's motion to controvert Judge Pollack's intercept order of November 8, 2002 and the subsequent intercept orders of Judges Skretny and Elfvin and suppression of the evidence obtained therefrom, on the basis that probable cause for such orders was lacking, be DENIED.

**Failure To Establish Necessity For The Eavesdropping Orders:**

The defendant asserts that "virtually all of the factual assertions concerning the need for electronic eavesdropping contained in the various eavesdropping applications were nothing more than generzed (sic) [generalized] statements and clearly boilerplate utterances designed to mislead the issuing judge" and that "the government/agent utilized eavesdropping as an investigative tool without

-10-

attempting to consummate their (sic) investigation by using other techniques." (Docket #26, ¶ 79; Docket #35, ¶ 57).  The defendant further alleges that "the application (sic) only contained speculative assertions, ultimately indicating that normal avenues of investigation had been previously 'carefully' (sic) evaluated including the use of pen register devices, etc." and that "it appears that the agents did not try to further the use of 'confidential sources,' the use of search warrants, or other conventional tools without resorting to the use of eavesdropping."  (Docket #26, ¶ 80; Docket #35, ¶ 57).  As a result, he argues that "the conclusory statements and the necessity aspect of the applications were insufficient to allow the agents to utilize eavesdropping in this instance."  (Docket #26, ¶ 82; Docket #35, ¶ 57).

A review of S.A. Kadan's affidavit of November 8, 2002 (Docket #35, Exhibit A attached thereto) establishes that S.A. Kadan advised Judge Pollack in paragraphs 60 through 69 thereof that, in fact, other investigative techniques had been tried or reasonably appeared likely to fail if tried or were likely to be too dangerous to employ.  Such other investigative techniques considered were "surveillance," use of "telephone records and pen registers," "federal grand jury," "witness interviews," "use of confidential informants," use of "undercover officers," "search warrants," and "arrests." (Docket #35, Exhibit A attached thereto, ¶¶ 61-69).  Defendant's characterization of S.A. Kadan's reasons as to why use of other investigative techniques would not be successful as "generzed (sic) [generalized] statements and boilerplate utterances" and "conclusory statements" is somewhat disingenuous since S.A. Kadan spells out in significant detail as to why each of the proposed investigative techniques would not be

-11-

successful. Once again, the training and experience of the agent can be legitimately utilized in making the appropriate determinations for the issuance of an intercept order. *See United States v. Fama*, 758 F.2d 834, 838 (2d Cir.), *cert. denied*, 486 U.S. 1043 (1987).

>Title 18 U.S.C. § 2518(1)(c) requires that:
>
>a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied* 498 U.S. 906 (1990), addresses the issue raised by the defendant on whether 18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail.

>Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."

The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan dated May 27, 1987. Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful." In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at 104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).

We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554

F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). And, as the *Scibelli* court went on to say:

> [I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner. The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".
>
> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the showing be tested in a practical and commonsense fashion.
>
> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p.

(citations omitted).

> *Scibelli*, 549 F.2d at 226.

*Id.* at 231-232) (brackets included); *See also Diaz, supra* 111.

Giving proper deference to Judge Pollack's review and acceptance of the forty-six (46) page affidavit of S.A. Kadan sworn to November 8, 2002 in support of the application for the Intercept Order and his decision to grant said application and issue the order in question, it is concluded that Judge Pollack "properly found that conventional investigative techniques had been exhausted and that alternatives to wire interception would be unlikely to succeed or would be too dangerous." *Id.* at 111.

Therefore, it is RECOMMENDED that defendant's motion to controvert the intercept order of November 8, 2002 and suppress the evidence derived therefrom and the subsequent intercept orders issued by Judges Skretny and Elfvin on the basis of non-necessity be DENIED.

## CONCLUSION

Based on the foregoing, it is hereby RECOMMENDED that defendant's motion to controvert the intercept order of the Hon. Milton Pollack, U.S.D.J. (S.D.N.Y.) dated November 8, 2002 and the subsequent intercept orders of the Hon. William M. Skretny dated March 4, 2003, April 2, 2003, May 14, 2003, May 30, 2003 and June 23, 2003 and of the Hon. John T. Elfvin dated May 1, 2003 and the suppression of evidence obtained as a result of said orders be DENIED in its entirety; and it is hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of**

**Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

**S/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

**DATED:    Buffalo, New York**
**         July 21, 2005**